## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43277

STATE OF IDAHO,

     **Plaintiff-Respondent,**

v.

BRANT LEE EVERSOLE,

     **Defendant-Appellant.**

)
)
)
)
)
)
)
)
)
)
)
)
.

Boise, January 2016 Term

2016 Opinion No. 40

Filed: April 4, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County.  Hon. Darren B. Simpson, District Judge.

District court decision denying motion to suppress, <u>reversed</u>.  Decision denying motion to dismiss, <u>affirmed</u>.  Case <u>remanded.</u>

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant.  Justin Curtis, Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.  Russell J. Spencer, Deputy Attorney General argued.

_____

BURDICK, Justice

This case comes to the Idaho Supreme Court on a petition for review of a Court of Appeals decision. Brant Lee Eversole was arrested for driving while under the influence and, after refusing to submit to a breath alcohol test, was taken to a hospital where his blood was drawn. Based on the results of the blood test, police charged Eversole with felony DUI and Eversole entered a conditional guilty plea, preserving his right to appeal two orders, one of which was an order denying a suppression motion. In a 2-1 decision, the Court of Appeals vacated the order denying the motion to suppress on the basis that Eversole revoked implied consent to the blood draw when he refused to submit to the earlier breath test. The State petitioned this Court for review of the suppression issue only. Eversole additionally requests this Court to review the Court of Appeals' decision affirming the district court's denial of Eversole's motion to dismiss.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2011, an officer observed Brant Lee Eversole in the driver's seat of a truck located in front of a bar. The truck was high-centered on a two-foot tall "brick berm," such that the rear wheels of the vehicle did not touch the ground. The officer testified that the engine was on and the rear tires were spinning, and that two other men were trying to get the vehicle off the berm by lifting it with a jack. The officer described the jack strategy as a "feeble" effort and that it was unlikely to work. The officer did acknowledge that the strategy might have worked if the men positioned the jack "a little bit differently," but noted that even then, he did not observe any other vehicles that the men could have used to tow the truck off the berm.[1]

The officer's observations led him to believe that Eversole was intoxicated and he therefore began administering field sobriety tests. Eversole attempted to complete some of the field sobriety tests, but refused to complete them all. Because the attempted tests indicated intoxication, the officer arrested Eversole. Thereafter, Eversole additionally refused to submit to a breath alcohol test. The officer then took Eversole to a hospital and his blood was drawn. The blood test showed that Eversole had an alcohol concentration of .279 grams of alcohol per one hundred (100) cubic centimeters of blood. Eversole was subsequently charged with operating a motor vehicle while under the influence of alcohol.

On January 18, 2013, Eversole filed a motion to dismiss on the basis that the State could not prove that the vehicle was operable at the time he was in it. The district court disagreed and held there was some evidence that Eversole and his companions could have moved the vehicle within a short time, rendering it operable. *See State v. Adams*, 142 Idaho 305, 127 P.3d 208 (Ct. App. 2005). Consequently, it denied Eversole's motion to dismiss.

Eversole subsequently filed a motion to suppress the results of his blood draw. Rather than conducting an evidentiary hearing on the suppression motion, the parties stipulated to the following facts for the district court to consider:

> At the time of his arrest, Mr. Eversole refused to provide a breath sample for the purpose of determining his blood alcohol content.

> Upon the Defendant's refusal to provide a breath sample, Deputy Morgan transported the Defendant to Bingham Memorial Hospital where Tiffany Henderson, a technician in the lab, drew Mr. Eversole's blood pursuant to Deputy Morgan's request.

---

[1] A tow truck eventually towed Eversole's vehicle off the berm.

On April 12, 2013, the district court entered an order denying Eversole's suppression motion.

Following the denial of the suppression motion and the motion to dismiss, Eversole entered a conditional *Alford*[2] plea preserving his right to appeal the denial of those two motions. Eversole appealed the denial of those two motions on May 31, 2013. While the appeal was pending, this Court issued its opinion in *State v. Wulff*, 157 Idaho 416, 337 P.3d 575 (2014), and subsequent cases, which, based upon the recent United States Supreme Court decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), overruled prior Idaho precedent and held that implied consent could be revoked.

In this case, the Court of Appeals looked to those recent decisions and affirmed the denial of the motion to dismiss, but in a 2-1 decision, determined that the district court erred when it denied Eversole's motion to suppress the evidence obtained from the blood draw. *State v. Eversole*, 2015 WL 1542545 (Idaho Ct. App. Apr. 8, 2015). The Court of Appeals concluded that when Eversole refused to take the breath test, he withdrew any implied consent to a blood draw. *Id.* at *4. The Court went on to hold that because the State presented no evidence of consent to the blood draw, the blood draw was an impermissible warrantless search, and the district court erred when it denied the motion to suppress the evidence obtained from it. *Id.* Consequently, the Court of Appeals vacated the district court's order denying Eversole's motion to suppress and remanded to the district court for further proceedings. *Id.* We then granted the State's petition for review.

## II. ANALYSIS

On a petition for review, this Court seriously considers the Court of Appeals' views, but directly reviews the lower court's decision. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). With that in mind, we turn to the two issues raised in this appeal. The first issue is whether the district court erred when it denied Eversole's motion to suppress evidence obtained from a warrantless blood draw. More specifically, the issue is whether a driver's refusal to submit to a breath alcohol test constitutes refusal to all other forms of alcohol concentration testing. The second issue is whether the district court erred when it denied Eversole's motion to dismiss. We address each in turn below.

**A. The district court erred when it denied Eversole's motion to suppress evidence from the warrantless blood draw.**

---

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

3

Eversole argues that the district court erred when it denied his motion to suppress evidence from the warrantless blood draw because he withdrew his implied consent to alcohol concentration testing when he refused to submit to a breath test. We agree.

The standard of review of a suppression motion is bifurcated. When this Court reviews an order granting or denying a motion to suppress, it accepts the trial court's factual findings unless they are clearly erroneous. *Wulff*, 157 Idaho at 418, 337 P.3d at 577. However, this Court freely reviews the trial court's application of constitutional principles in light of those facts. *Id.*

Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *Wulff*, 157 Idaho at 418, 337 P.3d at 577. Therefore, warrantless forced blood draws generally violate the state and federal constitutions. *See McNeely*, 133 S. Ct. 1552; *Wulff*, 157 Idaho at 419, 337 P.3d at 578. However, the warrant requirement does not apply if the person subjected to the search has consented. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Wulff*, 157 Idaho at 423, 337 P.3d at 582.

Idaho's implied consent statute, Idaho Code section 18-8002(1), states that "any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol." At the time of the proceedings below, Idaho Supreme Court precedent held that this statutorily implied consent satisfied the consent exception to the constitutional warrant requirement. *State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575. Additionally, and in contravention of the general rule that consent may be withdrawn or revoked, this Court had held that actions or statements revoking implied consent were ineffective. *State v. Woolery*, 116 Idaho 368, 373, 775 P.2d 1210, 1215 (1989), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575.

These points of law have recently changed, however. In a series of recent decisions, this Court reexamined its application of Idaho's implied consent statute in light of the United States Supreme Court's decision in *McNeely*. In *McNeely*, the United States Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 133 S. Ct. at 1568. Following *McNeely*, this Court determined that Idaho's precedent regarding the revocability of

4

implied consent was inconsistent with the Supreme Court's guidance in that opinion. Indeed, in *Wulff*, this Court concluded that "[a] holding that the consent implied by statute is irrevocable would be utterly inconsistent with the language in *McNeely* denouncing categorical rules that allow warrantless forced blood draws." *Wulff*, 157 Idaho at 422, 337 P.3d at 581. Accordingly, under current Idaho law, a defendant's refusal, protest, or objection to alcohol concentration testing terminates the implied consent given under Idaho's implied consent statute:

> [A]n implied consent statute such as . . . Idaho's does not justify a warrantless blood draw from a driver who refuses to consent . . . or objects to the blood draw. . . . Inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent.

*State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014). *See also State v. Arrotta*, 157 Idaho 773, 774, 339 P.3d 1177, 1178 (2014) ("A suspect can withdraw his or her statutorily implied consent to a test for the presence of alcohol.").

Eversole argues that our precedent upholding the validity of statutorily created implied consent is manifestly wrong in light of *McNeely*. Specifically, Eversole argues that "to the extent that this Court's recent cases stand for the proposition that implied consent is valid up to the point that a defendant refuses testing, they are in conflict with the rule that it is the State's burden to prove consent, and that consent must be shown to be voluntary under the totality of the circumstances." Eversole contends that *McNeely* requires this Court to use a totality of the circumstances test to analyze whether a warrantless blood test of a drunk-driving suspect is reasonable and insists that Idaho's implied consent statute cannot alter the exceptions to the warrant requirement nor bypass the totality of the circumstances test. We do not read *McNeely* so narrowly.

*McNeely* did not specifically address the validity of implied consent statutes much less hold that implied consent statutes cannot serve as an exception to the warrant requirement. Moreover, its emphasis on the totality of the circumstances test was in regards to the exigent circumstances exception to the warrant requirement, not to implied consent statutes. Indeed, the Supreme Court expressed disapproval of *per se* exceptions to the warrant requirement and held that "the natural metabolization of alcohol in the bloodstream" did not present a "per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 133 S. Ct. at 1556. The Court held that instead, "exigency in this context must be determined case by case based on the totality of the

circumstances." *Id.* Nowhere does *McNeely* suggest that implied consent statutes do not constitute constitutional consent or that a totality of the circumstances test is the exclusive means for establishing consent.

Instead, *McNeely* recognized that implied consent statutes are one type of "*a broad range of legal tools* to enforce [] drunk-driving laws and *to secure BAC evidence without undertaking warrantless nonconsensual blood draws.*" 133 S. Ct. at 1566 (emphasis added). The Court stated, "Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id.* Thus, *McNeely* suggests that implied consent statutes are still a valid means of obtaining BAC evidence.

The resolution of the suppression issue in this case turns on the scope of the withdrawal of implied consent to a particular form of alcohol concentration testing. Eversole argues that the State urges this Court to adopt a rule that would require a defendant to withdraw consent as to every specific form of alcohol testing to which the defendant is requested to submit.

As mentioned above, Idaho's implied consent statute provides:

> Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to **evidentiary testing for concentration of alcohol** as defined in section 18-8004, Idaho Code . . . .

I.C. § 18-8002(1). Idaho Code section 18-8004 in turn provides, in relevant part:

> (1)(a) It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

I.C. § 18-8004(1)(a).

Idaho's implied consent statute makes clear that a defendant is deemed to give implied consent to *evidentiary testing* for alcohol concentration as it is defined in Idaho Code section 18-8004. Idaho Code section 18-8004 does not define evidentiary testing, but rather explains how alcohol concentration is determined. However, Idaho Code section 18-8002A defines evidentiary testing as "a procedure or test or series of procedures or tests utilized to determine the concentration of alcohol . . . in a person." I.C. § 18-8002A(e). Thus, evidentiary testing under

Idaho Code section 18-8002 refers to the aggregate of methods, including breath, blood, and urine samples, that may be used to determine alcohol concentration. In other words, rather than referring to individual tests, the foregoing provisions lump all of the tests together as "evidentiary testing." Consequently, when an individual refuses to submit to an offered test for alcohol concentration, the individual is withdrawing implied consent created by Idaho Code section 18-8002(1), which is implied consent to evidentiary testing in general, not merely implied consent to that particular form of testing.

In this case, Eversole refused to participate in an evidentiary test for alcohol concentration. Therefore, he withdrew any implied consent to evidentiary testing created by Idaho Code section 18-8002(1), which includes breath, blood, or urine testing. After Eversole refused the breath test, the police officer took him to a hospital where a blood sample was drawn for alcohol testing. Because Eversole's implied consent to evidentiary testing for alcohol concentration already had been revoked, the consent exception to the warrant requirement was inapplicable, unless the State proved by a preponderance of the evidence some subsequent action or statement Eversole made within a reasonable time renewing his consent to evidentiary testing. The State did not do so. Therefore, the blood draw was an impermissible warrantless search, and the test results must be suppressed.

## B. The district court did not abuse its discretion when it denied Eversole's motion to dismiss.

This Court applies an abuse of discretion standard when it reviews a trial court's decision on a motion to dismiss. *State v. Card*, 137 Idaho 182, 184, 45 P.3d 838, 840 (2002). We use a three-part inquiry to determine whether a trial court has abused its discretion: (1) whether the court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *State v. Joy*, 155 Idaho 1, 6, 304 P.3d 276, 281 (2013).

Eversole argues that the district court erred when it denied his motion to dismiss the DUI charge because his truck was stuck on a brick berm and was therefore inoperable. The State argues that the district court correctly determined that a trier of fact could reasonably conclude that Eversole's vehicle was readily capable of being operable. Consequently, the State asserts that the district court correctly determined that the issue of operability was a question of fact for the jury, which precluded dismissal.

The relevant statue defining the offense of felony driving while under the influence provides:

> It is unlawful for any person who is under the influence of alcohol . . . to drive or be in *actual physical control* of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

Idaho Code section 18-8004(1)(a) (emphasis added). The statute further defines "actual physical control" as "being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving." I.C. § 18-8004(5).

Although the evidence presented in this case indicates that Eversole's vehicle's motor was running, Eversole contends that the statute requires that the vehicle also be operable or readily capable of being operable. Eversole asserts that because his vehicle was stuck on a brick berm, it was not operable and therefore he was not in actual physical control of the vehicle for purposes of the DUI statute.

This Court has not yet addressed whether a vehicle must be operable for an occupant to be convicted of being in actual physical control of a vehicle while under the influence. However, the plain language of the statute only requires that the defendant be in the driver's position of the motor vehicle with the motor running to show that the defendant was in "actual physical control" of the vehicle. We decline to read additional requirements into the statute, particularly where the language is clear and unambiguous. *See State v. Schall*, 157 Idaho 488, 492, 337 P.3d 647, 651 (2014)("Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction." (quoting *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999)). The facts of this case demonstrate that for purposes of Idaho Code section 18-8004(1)(a), a reasonable jury could find Eversole guilty. Thus, the district court did not abuse its discretion when it denied Eversole's motion to dismiss.

### III. CONCLUSION

We affirm the district court's denial of Eversole's motion to dismiss. However, we reverse the district court's denial of Eversole's motion to suppress and remand to the district court for further proceedings consistent with this opinion.

Chief Justice J. JONES and Justices EISMANN and HORTON, **CONCUR.**

Justice W. JONES, concurring in part and dissenting in part.

I concur with the majority's holding regarding the motion to dismiss; however, I respectfully dissent from the majority's conclusion that an individual's refusal to submit to a breath test serves to withdraw his or her implied consent to evidentiary testing generally. I believe an individual's refusal to submit to a specific evidentiary test pertains only to that specific test and does not serve to withdraw implied consent to other methods of evidentiary testing. I agree with Judge Gratton's dissent in the Idaho Court of Appeals decision. In the present case it is clear that Eversole refused to submit to a breath test; however, there is no indication that Eversole refused to submit to a blood test. Therefore, I disagree with the majority's conclusion that Eversole withdrew his implied consent to submit to a blood test.

In *Mills v. Swanson*, this Court analyzed whether silence amounts to a refusal to submit to the chemical testing of blood in order to determine blood alcohol content. 93 Idaho 279, 280, 460 P.2d 704, 705 (1969). The *Mills* Court cited *State v. Bock*, stating: "By operating a motor vehicle in this state the defendant is deemed to have given his consent to a chemical test. The only way he can withdraw that consent is to expressly refuse the test." *Mills* at 281, 460 P.2d at 705 (quoting *State v. Bock*, 80 Idaho 296, 308, 328 P.2d 1065, 1072 (1958) (internal quotations omitted)). The *Mills* Court continued, defining "expressly" as "in direct or unmistakable terms" and "declared and not merely left to implication." *Mills* at 281, 460 P.2d at 705 (citing Webster's Third New International Dictionary (Unabridged); Black's Law Dictionary 692 (Revised 4 ed. 1968); *Magone v. Heller*, 150 U.S. 70, 14 S.Ct. 18, 37 L.Ed. 1001 (1883); *City & County of San Francisco v. Western Airlines Inc.*, 204 Cal.App.2d 105, 22 Cal. Rptr. 216 (1962)). Ultimately, the *Mills* Court concluded "that where an individual has neither refused nor consented . . . it cannot be said that there was an express refusal to take the test." *Mills*, 93 Idaho at 280, 460 P.2d at 705.

In this case, the majority extends the *Mills* holding too far. Eversole withdrew his implied consent to submit to the breath test in direct and unmistakable terms. He did not withdraw his implied consent as to any other evidentiary test, yet the majority concludes that his specific refusal as to the breath test implies a refusal as to evidentiary testing in general. Such a holding contradicts the *Mills* Court's direction that a refusal cannot be left to implication.

Furthermore, the majority claims that because evidentiary testing under Idaho Code section 18-8002 refers to an aggregate of methods, a refusal of one test constitutes a refusal to

9

evidentiary testing in general. I cannot support such a conclusion. The definition of evidentiary testing, to which the majority cites, is "a procedure or test or series of procedures or tests utilized to determine the concentration of alcohol . . . in a person." I.C. § 18-8002A(e). The majority claims this definition lumps all the tests together as evidentiary testing in the aggregate rather than referring to individual tests; therefore, the majority claims, a refusal to submit to a specific evidentiary test withdraws implied consent to submit to evidentiary testing in general. Such a conclusion ignores the fact that Idaho Code section 18-8002A(e) clearly defines evidentiary testing in both singular and plural terms. The statement that evidentiary testing does not refer to individual tests is incorrect. After all, there is a clear difference between a request to submit to evidentiary testing in the aggregate and a request to submit to a specific evidentiary test. Here, the police officer requested Eversole to submit to a specific evidentiary test; thus, Eversole's refusal only pertained to that specific test. If the police officer had requested Eversole to submit to evidentiary testing in the aggregate it would be correct to hold that Eversole's refusal withdrew his implied consent as to all evidentiary testing. However, that is not the case here.

Separately, we should not assume that refusing a specific test equates to a refusal as to all tests. There are a variety of reasons why an individual would refuse to submit to a blood test but consent to a breath test, or *vice versa*. An individual concerned with the accuracy of evidentiary tests may consent to a blood test but not a breath test, as the blood test is more accurate than a breath test. Alternatively, an individual who does not trust law enforcement may consent to a blood test but not a breath test, as the breath test is conducted and recorded by a police officer while the blood test is conducted and recorded by hospital staff. Additionally, an individual may consent to a breath test but not a blood test on the basis that a blood test is too intrusive and presents the risk injury caused by a contaminated needle. Accordingly, I believe an individual's refusal as to a specific evidentiary test should be interpreted as a refusal as to that evidentiary test only.

In sum, a refusal to submit to evidentiary testing must be declared in direct terms rather than left to implication. It cannot be assumed that an individual who would refuse one evidentiary test would not submit to others. Further, there is no valid statutory basis for grouping individual tests, as evidentiary testing is defined in both singular and plural terms. Therefore, I dissent from the majority's holding regarding the motion to suppress.