**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51010**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 4, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MONTANA VINCENT BURKE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Judgment for felony driving under the influence, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Montana Vincent Burke appeals from his judgment of conviction for felony driving under the influence (DUI). We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While driving at approximately 12:45 a.m., Burke ran a red light. A police officer saw Burke and conducted a traffic stop. Burke admitted to the officer that he had been at a bar and had consumed one beer at 10:00 p.m. The officer noticed that Burke had "watery eyes and a blank stare" and that he smelled of alcohol. After Burke failed field sobriety tests, the officer asked Burke to consent to a breath test and Burke refused. The officer then told Burke that the purpose

1

of the test was to help the officer determine if Burke was safe to drive. Burke continued to refuse and the following exchange occurred:

> Officer: So, you say you do not consent?
> Burke: No sir.
> Officer: Do you consent to giving blood?
> Burke: Uh, no.
> Officer: It is either breath or blood.
> Burke: I don't consent to either.

The officer then played an audio recording of the information required to be given to a driver suspected of driving under the influence of drugs or alcohol pursuant to I.C. §§ 18-8002 and 18-8002A. That information includes an explanation of the consequences of failing to submit to or complete an evidentiary test and the consequences of failing the test. The Idaho Transportation Department has promulgated a form for use by officers in providing that information. Instead of reading the form to DUI suspects, officers sometimes play an audio recording of the same information prior to administering an evidentiary test. Near the beginning of the form (and the audio recording) the suspect is informed: "You are required by law to take one or more evidentiary test(s) to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in your body." After playing the audio recording, the officer again asked Burke to consent as follows:

> Officer: . . . Are you willing to give consent for breath?
> Burke: Ah, no sir.
> . . . .
> Officer: And obviously you're required to submit to [a] chemical test, ok, breath or blood, when you get your license, so you're gonna consent to blood then?
> Burke: Ah, sure.
> Officer: Sure you don't wanna do breath?
> Burke: No.

Burke's blood was drawn and the test revealed a blood alcohol concentration of .110. Burke was charged with felony operating a motor vehicle while under the influence of alcohol (two or more convictions within ten years), to which he pled not guilty. I.C. §§ 18-8004 and 18-8005(6).

Burke filed a motion to suppress evidence, arguing that his purported consent to testing was involuntary. He asserted that he withdrew his consent by informing the officer that Burke would not consent to either a breath or blood test and that subsequent consent was involuntary for

2

several reasons. The district court denied Burke's motion to suppress. Burke entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress. Burke appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The Fourth Amendment to the United States Constitution and Article I Section 17 of the Idaho Constitution prohibit unreasonable searches and seizures. Requiring a person to submit to a blood alcohol test is a search and seizure. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Wulff,* 157 Idaho 416, 419, 337 P.3d 575, 578 (2014). A warrantless search and seizure is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A warrantless search and seizure may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 708, 963 P.2d 387, 391 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App.

1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

Idaho's implied consent statute, I.C. § 18-8002, provides that any person who drives a motor vehicle in Idaho shall be deemed to have given consent to evidentiary testing for concentration of alcohol provided that the officer administering the test has reasonable grounds to believe that the person has been driving under the influence of alcohol. However, such consent is revocable and, when an individual withdraws consent to an offered test of alcohol concentration, the individual withdraws consent to evidentiary testing in general--not merely implied consent to that particular test. *State v. Eversole*, 160 Idaho 239, 244, 371 P.3d 293, 298 (2016). However, a subsequent action or statement made within a reasonable time can renew consent to evidentiary testing. *Id.*

The Idaho Supreme Court has held that "irrevocable implied consent that operates as a per se rule cannot fit under the consent exception because it does not always analyze the voluntariness of that consent. Voluntariness has always been analyzed under the totality of the circumstances approach." *Wulff*, 157 Idaho at 422, 337 P.3d at 581. An individual's consent is involuntary if his or her will has been overborne and his or her capacity for self-determination critically impaired. *Schneckloth*, 412 U.S. at 225-26.

Burke argues on appeal that his consent was involuntary. He contends that, even though the three officers[1] did not raise their voices or expressly threaten him and even though the audio recording tracked the language of the implied consent statute on the administrative penalties for refusing testing, the totality of the circumstances shows that his consent to a blood test was not voluntary. Burke argues that the combination of the officer telling Burke after the audio recording that he was required to submit to a breath or blood test, the presence of three officers, that the traffic stop occurred at night, and that the officer retained Burke's driver's license so he was not free to leave demonstrates Burke's will was overborne. Thus, he argues, the district court's determination that his consent was voluntary was clearly erroneous.

---

[1] There were three officers present during the encounter. However, Burke primarily interacted with just one officer.

4

Burke initially withdrew his implied consent to evidentiary testing when the officer first requested that Burke submit to a breath test. Burke reiterated his refusal to consent after the officer played the audio recording informing Burke of the consequences of refusing evidentiary testing. However, when the officer explained to Burke, "[a]nd obviously you're required to submit to [a] chemical test, ok, breath or blood, when you get your license, so you're gonna consent to blood then," Burke then consented to a blood test.

A determination of voluntariness does not turn on a single controlling criterion. Factors to be considered include whether there were numerous officers involved in the confrontation; the location and conditions of the consent, including whether it was at night; whether the police retained the individual's identification; whether the individual was free to leave; and, whether the individual knew of his or her right to refuse consent. *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006). Whether consent was granted voluntarily or was a product of coercion is a factual determination based upon the surrounding circumstances accounting for subtly coercive police questions and the possibly vulnerable state of the party granting consent. *Schneckloth*, 412 U.S. at 226.

> The district court summarized its findings and the rationale for its ruling as follows:

> From the video, the Court infers Mr. Burke is a rational self-sufficient human-being like most others; albeit a mildly intoxicated one during this interaction. Having watched and listened to the recording of the officer's interactions with Burke, the Court is persuaded that the officer did nothing that would make a mildly intoxicated rational human being feel compelled to take the blood test, other than by the way the legislature has decided to compel people to take such tests.[2] And there is no evidence Mr. Burke felt compelled by some threat other than the threat of losing his driver's license.

The findings of the district court are supported by substantial and competent evidence. The district court considered the body camera video and the testimony of the officer. Based on its review of this evidence, the district court found that neither the officer's initial statements, the statements in the administrative license suspension tape, or the officer's repetition of that language was coercive.

---

[2]    This is an apparent reference to I.C. §§ 18-8002 and 18-8002A (administrative license suspension) which provide that (at the time an evidentiary test is requested by an officer) the driver must be informed of the consequences of submitting to an evidentiary test but not completing it, failing an evidentiary test, or refusing it. Such consequences are enumerated at length in the two statutes.

After a lengthy analysis, the district court concluded that, "considering the totality of the circumstances, the [district court] is persuaded Burke made a voluntary decision to change his mind and submit to a blood draw, even though he had earlier stated he would not."

We note, as did the district court, that the use of the word "required" in the audio recording (and repeated by the officer a few moments after the audio recording was played) may be imprecise.[3] However, in the context of the audio recording and I.C. § 18-8002, the audio recording informed Burke that there were consequences to refusing the test. In other words, Burke was informed that he was required to submit to the test or face the consequences, which included suspension of his driving privileges. It is not unconstitutional coercion to inform a person of the legal consequences of his or her decisions. *State v. LeClercq*, 149 Idaho 905, 910-11, 243 P.3d 1093, 1098-99 (2010). After being advised on the consequences for failing to submit to an evidentiary test, Burke agreed to submit to a blood draw; this is not coercion, but rather, the voluntary exercise of choice. Based on the totality of the circumstances, the district court did not err in denying Burke's motion to suppress.

## IV.

## CONCLUSION

Burke has failed to show error in the district court's denial of his motion to suppress. Accordingly, Burke's judgment of conviction for felony driving under the influence is affirmed.

Judge HUSKEY and Judge TRIBE, **CONCUR**.

---

[3] The district court held there was no evidence presented that the officer was trying to be deceptive.